**Hearing Date: February 23, 2023 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline: February 16, 2023 at 4:00 p.m. (Prevailing Eastern Time)**

TOGUT, SEGAL & SEGAL LLP
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Neil Berger
Eitan E. Blander
*Attorneys for the Chapter 7 Trustee*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Case No. 21-12146-LGB |
| FITNESS RECOVERY HOLDINGS, LLC, | Chapter 7 |
| Debtor. | |

### NOTICE OF HEARING TO CONSIDER TRUSTEE'S APPLICATION FOR AN ORDER APPROVING SETTLEMENT AGREEMENT BY AND AMONG CHAPTER 7 TRUSTEE, PEAK CREDIT LLC, AND BAY POINT PARTIES

**PLEASE TAKE NOTICE** that a hearing will be held on **February 23, 2023 at 10:00 a.m. (prevailing Eastern Time)** (the "Hearing") or as soon thereafter as counsel can be heard, to consider the Trustee's attached *Application for an Order Approving Settlement Agreements By and Among the Chapter 7 Trustee, Peak Credit LLC, and the Bay Point Parties* (the "Application").

**PLEASE TAKE FURTHER NOTICE** that the Hearing will be held before the Honorable Lisa G. Beckerman, United States Bankruptcy Judge for the Southern District of New York, One Bowling Green, New York, New York 10004. In light of the COVID-19 pandemic, the Hearing will only be conducted telephonically. Parties wishing to participate in the Hearing must make arrangements through Court Solutions LLC at www.court-solutions.com. Instructions to register for Court Solutions LLC are attached to Gen. Ord. M-543. Appearances must be entered no later than February 22, 2023 at 4:00 p.m. (Prevailing Eastern Time).

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Application must be made in writing, stating in detail the reasons therefore, and must be filed with the Clerk of the Bankruptcy Court, with paper copies delivered to Chambers, and served upon: (i) Togut, Segal & Segal LLP, attorneys for Albert Togut, Chapter 7 Trustee, One Penn Plaza, Suite 3335, New York, New York 10119, Attn: Neil Berger, Esq. and Eitan E. Blander, Esq. (neilberger@teamtogut.com and eblander@teamtogut.com); (ii) the Office of the United States Trustee for the Southern District of New York (Region 2), U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014, Attn: Andrew D. Velez-Rivera, Esq. (Andy.Velez-Rivera@usdoj.gov); (iii) Amini LLC, attorneys for Peak Credit LLC, 131 West 35th St., 12th Floor, New York, NY 10001, Attn: Jeffrey Chubak, Esq. (jchubak@aminillc.com); (iv) Thompson Hine LLP, attorneys for Bay Point Parties, 3900 Key Center, 127 Public Square, Cleveland, Ohio 44114, Attn: John C. Allerding, Esq. and Curtis Tuggle, Esq. (John.Allerding@thompsonhine.com and Curtis.Tuggle@thompsonhine.com); and (v) any parties required to be served under any applicable Bankruptcy Rule or Local Rule, so that they are actually received by the aforementioned parties not later than **4:00 p.m. (ET) on February 16, 2023** (the "Objection Deadline"). Objections not timely served and filed may not considered by the Court.

**PLEASE TAKE FURTHER NOTICE** that if no objections are received prior to the Objection Deadline, the Court may cancel the Hearing and enter the proposed order attached to the Application without holding the Hearing.

*[Remainder of page left intentionally blank.]*

**PLEASE TAKE FURTHER NOTICE** that the hearing to consider the

Application may be adjourned from time to time, without further written notice to any

party.

Dated:   New York, New York
         January 27, 2023

ALBERT TOGUT, not individually but solely
in his capacity as Chapter 7 Trustee
By His Attorneys,
TOGUT, SEGAL & SEGAL LLP
By:

*/s/ Neil Berger*
NEIL BERGER
EITAN E. BLANDER
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000

Togut, Segal & Segal LLP
*Attorneys for Albert Togut*
*Not Individually But Solely in His Capacity*
*as the Chapter 7 Trustee*
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Neil Berger
Eitan Blander

Hearing Date: **February 23, 2023 at 10:00 a.m. ET**
Objection Deadline: **February 16, 2023 at 4:00 p.m.ET**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>FITNESS RECOVERY HOLDINGS, LLC,<br><br>Debtor. | Case No. 21-12146-LGB<br><br>Chapter 7 |

### CHAPTER 7 TRUSTEE'S APPLICATION FOR AN ORDER APPROVING SETTLEMENT AGREEMENT BY AND AMONG CHAPTER 7 TRUSTEE, PEAK CREDIT LLC, AND BAY POINT PARTIES

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................... 1

RELIEF REQUESTED ....................................................................................................... 2

JURISDICTION AND VENUE .......................................................................................... 3

BACKGROUND ................................................................................................................. 3

    A.  The Settlement Parties and the TSI DIP Loan ........................................................ 3

    B.  Execution of the New TSI Loan Agreement ............................................................ 5

    C.  Chapter 7 Case Procedural History ......................................................................... 8

    D.  The Settlement Agreement ..................................................................................... 10

BASIS FOR RELIEF ........................................................................................................ 12

CONCLUSION ................................................................................................................. 16

NOTICE ............................................................................................................................ 16

NO PRIOR REQUEST ..................................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Cosoff v. Rodman (In re W.T. Grant Co.),* 699 F.2d 599 (2d. Cir. 1983)................................... 13

*In Re Adelphia Communications Corp.,* 327 B.R. 143 (Bankr. S.D.N.Y. 2005) ....................... 13

*In re Drexel Burnham Lambert Grp., Inc.,* 134 B.R. 493 (Bankr. S.D.N.Y. 1991) ................... 13

*In re Enron Corp.,* 2003 WL 230838 (S.D.N.Y. Jan. 31, 2003)................................................. 12

*In re Hibbard Brown & Co., Inc.,* 217 B.R. 41 (Bankr. S.D.N.Y. 1998) ................................... 12

*In re Iridium Operating LLC,* 478 F.3d 452  (2d Cir. 2007) ............................................... 12, 13

*Nellis v. Shugrue,* 165 B.R. 115 (S.D.N.Y. 1994) ..................................................................... 12

*Plaza Equities LLC v. Pauker (In re Copperfield Invs., LLC),*

    401 B.R. 87 (Bankr. E.D.N.Y. 2009)..................................................................................... 13

*Protective Committee for Independent Stockholders of*

    *TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414 (1968)................................................... 13

**Statutes**

28 U.S.C. § 157(b)........................................................................................................................ 3

28 U.S.C. §§ 1408 and 1409........................................................................................................ 3

28 U.S.C. §§ 157and 1334........................................................................................................... 3

**Rules**

Fed. R. Bankr. P. 9019(a)........................................................................................................... 12

TO THE HONORABLE LISA G. BECKERMAN,
UNITED STATES BANKRUPTCY JUDGE:

Albert Togut, not individually but solely in his capacity as Chapter 7 trustee (the "Trustee") of the estate (the "Estate") of Fitness Recovery Holdings LLC, the debtor (the "Debtor") in the above-captioned case (the "Chapter 7 Case"), by his attorneys, Togut, Segal & Segal LLP (the "Togut Firm"), respectfully submits this application (the "Application") for entry of an order (the "Proposed Order") approving the *Settlement Agreement* annexed hereto as **Exhibit "A"** (the "Settlement Agreement") by and among the Trustee, Peak Credit LLC ("Peak"), Bay Point Advisors, LLC ("BPA"), Bay Point Capital Partners, LP ("BPCP"), and Bay Point Capital Partners II, LP ("BPCP II", and together with BPA and BPCP, the "Bay Point Parties,") (together with the Trustee, Peak and the Bay Point Parties, the "Settlement Parties"), pursuant to sections 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure Rules (the "Bankruptcy Rules").  In support of the Application, the Trustee respectfully submits the Declaration of Neil Berger, a member of the Togut Firm, annexed hereto as **Exhibit "B"** and incorporated herein by reference.  In further support of this Application, the Trustee respectfully states:

## PRELIMINARY STATEMENT

The Settlement Agreement resolves the substantive issues at the center of this Chapter 7 Case, which arise from prepetition transactions involving the Debtor, the Bay Point Parties, Peak, and affiliates thereof in the context of a separate bankruptcy case in the Bankruptcy Court for the District of Delaware.  The Trustee and the Bay Point Parties have asserted that those prepetition transactions benefited Peak and its

affiliates to the detriment of the Debtor and the Bay Point Parties, and had the effect of rendering the Debtor insolvent and unable to pay its debts to its creditors. Those prepetition transactions reduced the Debtor's future income, extended the date on which the Debtor would realize any recoveries, and increased Peak's asserted first-priority secured claims against the Debtor.

The Trustee determined to retain special counsel to prosecute causes of action on behalf of the Estate, including claims for avoidance of fraudulent transfers related to the prepetition transactions, and to seek to reduce and/ or subordinate Peak's secured claims against the Debtor. With the assistance of proposed special counsel, the Trustee and the Togut Firm engaged in extensive settlement negotiations with Peak and the Bay Point Parties regarding the consensual resolution of all claims on behalf of the Trustee and the Bay Point Parties. The Settlement Agreement is the product of these negotiations, and represents a superior outcome for the Estate and all parties in interest.

The Settlement Agreement resolves the claims of the Bay Point Parties against the Debtor and Peak, consensually subordinates the Peak Claim, and provides for full payment of all expected administrative claims and allowed general unsecured claims against the Debtor's estate other than the Bay Point and Peak claims, which are also fully addressed in the Settlement Agreement.

Under these circumstances, the Trustee respectfully requests that the Court enter an order approving the Settlement Agreement.

## **RELIEF REQUESTED**

1.      The Trustee requests that that the Court enter the Proposed Order, substantially in the form annexed hereto as **Exhibit "C"** and approve the Settlement Agreement.

### JURISDICTION AND VENUE

2.      This Court has jurisdiction to consider this Application and the relief requested herein pursuant to 28 U.S.C. §§ 157 and 1334.  Consideration of this Application is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The predicates for the relief requested herein are Bankruptcy Code sections 105(a) and Bankruptcy Rule 9019.

### BACKGROUND

**A.     The Settlement Parties and the TSI DIP Loan[1]**

4.      The Debtor was formed in September 2020 as an investment vehicle for the purpose of providing $32 million of debtor-in-possession financing (the "DIP Loan") to Town Sports International, LLC and its subsidiaries (together, "TSI"), which had commenced Chapter 11 cases in United States Bankruptcy Court for the District of Delaware (the "Delaware Bankruptcy Court").  The Debtor funded the $32 million DIP commitment with capital raised from outside lenders, including BPCP and Peak, on terms provided in a note purchase agreement and promissory notes entered into with the individual investors in the Debtor (the "Debtor Investment Documents").[2]

5.      Peak was the sole holder of secured promissory notes against the Debtor, while all other investors were issued unsecured promissory notes.  In

---

[1]   The following summary of prepetition events and transactions is provided for convenience and is not intended to alter, enhance of impair any right, claim or defense in favor of any party.

[2]   In connection with BPCP's loan, the Debtor and BPA entered into a letter agreement pursuant to which the Debtor agreed to provide BPA with an equity kicker that would allow it to receive 2% of all distributions of cash to common members of the Debtor or 2% common equity ownership in the Debtor (or the acquisition entity formed to purchase TSI's assets) or, if the Debtor or acquisition entity was not successful in acquiring TSI's assets, the first $1 million of proceeds distributable to the Debtor after repayment of its loan obligations (the "Equity Kicker Agreement").

connection with the DIP Loan, the Debtor (or an entity owned by the Debtor) was to serve as the stalking horse bidder for the 363 sale of TSI's business.  The Debtor's directors and officers formed a new entity named New TSI Holdings, Inc. ("New TSI") for the purpose of serving as the proposed purchaser of TSI's assets.

6.      On October 16, 2020, the Delaware Bankruptcy Court approved TSI's motion to approve the DIP Loan.  The maturity date of the DIP Loan was January 12, 2021 (the "DIP Maturity Date").  The interest rate on the DIP Loan was 10% per annum, with a default interest rate of 12% per annum.  The DIP Loan included an exit premium of 2% of the DIP Commitment (the "Exit Premium") that was payable to the Debtor on the DIP Maturity Date.  The DIP Loan was secured by a first priority, properly perfected lien against all of TSI's assets.

7.      On November 4, 2020, the Delaware Bankruptcy Court entered an order (the "TSI Sale Order") authorizing TSI to sell substantially all of its assets to New TSI.  Pursuant to the sale order, New TSI agreed to assume TSI's obligations under the DIP Loan at the sale closing.

8.      However, following entry of the TSI Sale Order, additional DIP and exit was required to enable New TSI to successfully emerge as a continuing business.  On November 6, 2020, the Delaware Bankruptcy Court entered an amended final DIP order authorizing an increase in the Debtor's DIP Loan commitment (the "Supplemental DIP Funding").  BPCP II funded $1.5 million of the Supplemental DIP Funding that was provided by the Debtor pursuant to an Amended Letter Agreement dated November 11, 2020 (the "BPCP II Amended Letter Agreement").  Peak funded the remaining portion of the Supplemental DIP Funding, plus cash needed to close on the sale and capitalize New TSI, in the aggregate amount of $3 million, as memorialized

in the Third Amended Peak Note (defined below).  Pursuant to the Third Amended

Peak Note, the Debtor agreed that all membership interests in New TSI (or the ultimate

owner of New TSI) would be issued to Peak.

### B.   Execution of the New TSI Loan Agreement

9.      The sale of substantially all of TSI's assets to New TSI closed on

November 30, 2020.  Upon closing, TSI and the Debtor executed a payoff letter

discharging the DIP Loan and New TSI executed a new loan agreement for the principal

amount of the DIP Loan obligations (as amended, the "New TSI Loan Agreement").

New TSI's obligations to the Debtor under the New TSI Loan Agreement are secured by

a first priority lien on substantially all of New TSI's assets.

10.      Significantly, the New TSI Loan Agreement included terms that are

favorable for New TSI when compared against the initial DIP Loan, including:  (a) an

interest rate of 5% (compared to the 10% non-default and 12% default rate payable on

the DIP Loan);  (b) a maturity date of November 30, 2024 (compared to the November

30, 2020 DIP Maturity Date);  (c) no exit premium or other fees (compared to the 1%

origination fee and 2% Exit Premium that were included in the DIP Loan terms);  and

(d) provisions that permit New TSI to make distributions to its ultimate parent (i.e.,

Peak) (distributions which were prohibited under the DIP Loan).  In connection with

the New TSI Loan, the Debtor also agreed to waive its right to the Exit Premium, a

$696,000 benefit that flowed directly to New TSI and indirectly to Peak at the expense of

the Debtor and its creditors.  It does not appear that the Debtor received any

consideration for the waiver of the Exit Premium.

11.      As a result of the New TSI Loan Agreement, which extended the

maturity date of the Debtor's loan by four years, the Debtor was rendered insolvent

with no immediate cash inflow and no ability to address the $30-plus million debt that remained outstanding to its creditors and which would become due on December 31, 2020 pursuant to the terms of the Debtor Investment Documents.

12.    On December 2, 2020, the Debtor executed a Third Amended and Restated Secured Convertible Promissory Note (the "Third Amended Peak Note") in favor of Peak, which memorialized Peak's contribution to the Supplemental DIP Financing.  Pursuant to the Third Amended Peak Note, the Debtor (a) borrowed an additional $3 million from Peak (increasing its total debt investment in the Debtor to $23,125,000) for the purpose of advancing such funds to New TSI for operating expenses;  and (b) retroactively increased the interest rate payable on the previously issued Peak debt from 10% per annum to 24% per annum.  This transaction allowed Peak to infuse an additional $3 million into the Debtor as first priority secured debt (instead of a capital contribution) while also diluting the potential recovery of the Debtor's other, unsecured noteholders.  As discussed above, the Third Amended Peak Note provided that the Debtor would issue all membership interests in New TSI (or its ultimate owner) to Peak.  It does not appear that the Debtor's unsecured creditors received any consideration in connection with the diversion of all membership interests in New TSI to Peak.

13.    Also on December 2, 2020, the Debtor and Peak, but none of the other of the Debtor's creditors, executed an Amendment to Convertible Promissory Note Purchase Agreement & Convertible Promissory Notes (the "Debtor Investment Document Amendment"), whereby the Debtor purported to amend the terms of the Debtor Investment Documents to (a) reduce the interest rate applicable on the debt held by the Debtor's unsecured noteholders from 10% per annum to 5% per annum;  and

(b) extend the maturity date of the debt held by the Debtor's unsecured noteholders by six months.  There is no evidence to date to establish that Debtor's unsecured noteholders, including the Bay Point Parties, consented to any amendment of the debt terms.

14.    The effect of the New TSI Loan Agreement, the Third Amended Peak Note, and the Debtor Investment Document Amendment, taken together, was to edge out the Debtor's unsecured investors from any recovery on account of the New TSI Loan Agreement:  Peak's secured claim against the Debtor would accrue interest at 24% annually compared to 5% for unsecured noteholders, which would continue for four years until the extended maturity date occurred.  All the while, the Debtor's claim against the New TSI (controlled by Peak) would accrue interest at only 5% annual rate, down from 10% annually under the DIP Loan.

15.    On March 8, 2021, BPCP and BPCP II commenced a contract action against the Debtor in Delaware Superior Court ("Delaware State Court") seeking damages on account of the Debtor's failure to make payments under the unsecured promissory notes on the terms provided in the Debtor Investment Documents.

16.    In August 2021, the Debtor solicited its creditors for an offer to exchange their unsecured notes in the Debtor for new promissory notes against New TSI under a second lien credit agreement dated as of August 6, 2021 (the "Note Exchange").  Pursuant to a memorandum circulated to unsecured creditors, the Note Exchange was intended to address, in part, the incongruity and increasing discrepancy between the interest rates and maturity dates of the creditors' notes against the Debtor and the Debtor's claim against New TSI.  All of the Debtor's creditors other than BPCP, BPCP II, and Peak exchanged their loans to the Debtor for loans to New TSI.

17.     On December 15, 2021, BPCP and BPCP II obtained a judgment against the Debtor in Delaware State Court (the "Bay Point Judgments").

**C.    Chapter 7 Case Procedural History**

18.     On December 31, 2021 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in this Court (the "New York Bankruptcy Court").

19.     On January 3, 2022, Albert Togut was appointed as Chapter 7 Trustee of the Debtor; he duly qualified and is acting as Trustee herein.

20.     The Trustee conducted the Debtor's Chapter 7 section 341 meeting of creditors on March 23, 2022.

21.     By order dated December 29, 2022, the Court authorized the Trustee to retain the Togut Firm as his attorneys effective as of January 10, 2022 (the "Togut Retention Order") [Docket No. 23].

22.     On March 1, 2022, Peak filed Proof of Claim No. 1 against the Debtor as a secured claim in the amount of $31,335,901, plus postpetition interest and attorneys' fees under 11 U.S.C. § 506(b), based on the Debtor's obligations under the Third Amended Peak Note (the "Peak Claim").

23.     On March 11, 2022, BPA filed Proof of Claim No. 2 against the Debtor as an unsecured claim in an undetermined amount based on the Equity Kicker Agreement; BPCP II filed Proof of Claim No. 3 against the Debtor as an unsecured claim for $1,770,616, plus attorneys' fees, based on its portion of the Bay Point Judgments; and BPCP filed Claim No. 4 against the Debtor as an unsecured claim for $5,941,781, plus attorneys' fees, based on its portion of the Bay Point Judgments (together, the "Bay Point Claims").

24.     On October 26, 2022, the Clerk of the Court issued a Notice of Possible Dividends [Docket No. 19], which provided notice of a January 30, 2023 deadline for creditors to file a Proof of Claim (the "Bar Date").  One additional creditor, Legal Partners Group, LLC, filed Proof of Claim No. 5 on April 11, 2022, seeking $6,155.64 for legal staffing services performed.

25.     On November 29, 2022, the Trustee has filed an application (as may be amended) (the "Original Special Counsel Retention Application") [Docket No. 21] to employ Thompson Hine LLP ("Special Counsel") as special litigation counsel to investigate potential estate claims against Peak;  to challenge the amount of the Peak Claim, and to seek to equitably subordinate the Peak Claim, as well as to assert fraudulent transfer and other claims against Peak and New TSI (together, the "Trustee Litigation Claims").  The Trustee Litigation Claims could potentially have included, among other things, fraudulent transfer claims relating to the issuance of equity interests in the Sponsor to Peak, fraudulent transfer claims relating to the Third Amended Peak Note, claims relating to the Note Exchange, and other claims related to the Debtor's rights and entitlements to equity in the Sponsor, New TSI, or their respective affiliates.

26.     In addition to their claims against the Debtor, the Bay Point Parties have also asserted that they hold direct claims against Peak, New TSI and certain of their respective officers, directors, employees and affiliates (the "Bay Point Litigation Claims").

27.     In response to the Trustee's requests, this Court has deferred consideration of the Original Special Counsel Retention Application as settlement negotiations advanced.

D.      **The Settlement Agreement**

28.      Following extensive discovery, analysis and negotiations, the

Settlement Parties have executed the Settlement Agreement, in the form annexed hereto

as **Exhibit "A,"** which provides for settlement and resolution of all claims and causes of

action by and between the Trustee, Peak and New TSI, and the Bay Point Parties.  The

material terms of the Settlement Agreement are:[3]

- Transfer of Bay Point Parties' Claims. The Bay Point Parties
  will sell, transfer and assign all of their right, title and interest
  in, to and under the Bay Point Claims to Peak, without
  recourse of any kind, effective upon Peak's payment of the
  Purchase Price (defined below).  In consideration for the Bay
  Point Claims, Peak will pay the Bay Point Parties $7,725,690.59
  (the "Purchase Price"), within three business days following
  entry of the Approval Order, in accordance with wire transfer
  instructions provided by the Bay Point Parties prior to such
  date. Within three business days following payment of the
  Purchase Price, the Bay Point Parties will execute and deliver to
  Peak evidence of transfer of the Bay Point Claims, in the form
  attached to the Settlement Agreement as Exhibit 1.  The Bay
  Point Parties represent and warrant that neither they nor any of
  their affiliates have any other claims against the Debtor, aside
  from those filed March 11, 2022.

- Payment to Trustee. Peak shall pay the Trustee $500,000 within
  three business days following entry of an Approval Order, in
  accordance with wire transfer instructions provided by the
  Trustee prior to such date.

- Subordination, Allowance of Peak Claim. Upon Entry of the
  Approval Order, the full amount of Peak's claims in the
  Chapter 7 Case, including without limitation Peak's right to
  recovery on the Bay Point Claims, shall be subordinated to all
  other claims, commissions, compensation, and expenses filed
  and/or allowed in the Chapter 7 Case, for the purpose of
  distribution;  provided, however, that Peak's claims shall be
  allowed as a secured claim in the filed amount set forth in the

---

[3]      This summary of the Settlement Agreement is provided for the convenience of the Court and parties
in interest.  In the event of any inconsistency between the summary in this Application and the terms
of the Settlement Agreement, the terms of the Settlement Agreement shall govern.

Peak Claim, plus postpetition interest and attorneys' fees under 11 U.S.C. § 506(b).

- <u>Other Claims</u>. If any creditor of the Debtor other than Peak and the Bay Point Parties files a proof of claim in the Chapter 7 Case on or before the Claims Bar Date, Peak shall either object to or pay such claim(s) in full by February 28, 2023 to the extent not yet paid from the Debtor's Estate pursuant to an order approving a Trustee's final report and account in the Chapter 7 Case, subject to Peak being furnished a Form W-9 by the creditor, in full and final satisfaction of such claim(s). If Peak objects to any such claim(s), Peak shall pay the amount allowed by final order of the NY Bankruptcy Court to the extent not yet paid from the Debtor's Estate pursuant to an order approving a Trustee's final report and account in the Chapter 7 Case, subject to Peak being furnished a Form W-9 by the creditor, in full and final satisfaction of such claim(s). All creditors of the Debtor that are not Parties to this Settlement Agreement are intended third party beneficiaries of this Settlement Agreement, and they shall be entitled to enforce this Settlement Agreement against Peak if it fails to pay their respective claims pursuant to the Settlement Agreement.

- <u>Release by Trustee and Bay Point Parties of Peak and New TSI Parties.</u>  Effective upon the later of:  (i) entry of the Approval Order and (ii) the completion of all of Peak's payments under [the Sections] of this Settlement Agreement, the Trustee and the Bay Point Parties ("<u>Trustee and Bay Point Releasors</u>") will release Peak, New TSI and their respective subsidiaries and affiliates, and their respective shareholders, members, managers, directors, officers, employees, counsel and representatives (together, "<u>Peak Releasees</u>") from any and all obligations, liabilities, debts, claims, causes of action, including, without limitation, all Trustee Litigation Claims and Bay Point Litigation Claims, and for the avoidance of doubt all fraudulent transfer claims relating to the issuance of equity interests in the Sponsor to Peak and all fraudulent transfer claims relating to Peak's amended promissory note, as well as all causes of action relating to the Note Exchange or any right or entitlement to equity in Sponsor, New TSI or their respective affiliates, and demands of any kind whatsoever, at law or in equity, direct or indirect, known or unknown, discovered or undiscovered, that the Trustee and Bay Point Releasors ever had, now have or hereafter can, shall or may have against any of the Peak Releasees, from the beginning of the world to the date hereof concerning or in any way related to the Debtor or the Chapter 7 Case; provided, however, Section 7 of the Settlement

11

Agreement shall not release: (i) any claim that any Party or creditor of the Debtor has to enforce the Settlement Agreement or (ii) claims for damages based upon a breach of the Settlement Agreement.

- <u>Release By Peak and New TSI of Bay Point Parties</u>. Effective upon entry of the Approval Order, Peak and New TSI, and all persons claiming by, through or under them (together, the "<u>Peak Releasors</u>") shall release the Bay Point Parties and their subsidiaries and affiliates, their respective shareholders, members, managers, directors, officers, employees, counsel and representatives (together, the "<u>Bay Point Releasees</u>") from any and all obligations, liabilities, debts, claims, causes of action, and demands of any kind whatsoever, at law or in equity, direct or indirect, known or unknown, discovered or undiscovered, that the Peak Releasors ever had, now have or hereafter can, shall or may have against any of the Bay Point Releasees from the beginning of the world to the date hereof; provided, however, the Settlement Agreement shall not release any claim that any Peak Releasor has for a breach of or to enforce this Settlement Agreement.

## BASIS FOR RELIEF

29.     Bankruptcy Rule 9019(a) provides that, "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions [of the Bankruptcy Code]." 11 U.S.C. 105(a).

30.     The settlement of disputes is encouraged and generally favored in bankruptcy cases. *See Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994); *see also In re Hibbard Brown & Co., Inc.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998) (the bankruptcy court may exercise its discretion in determining whether to approve a settlement "in light of the general public policy favoring settlements").

31.     Before approving a settlement under Bankruptcy Rule 9019, a court must determine that the proposed settlement is both (i) fair and equitable, and (ii) in the

best interests of the Debtor's estate. *See Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 462 (2d Cir. 2007) (applying the "fair and equitable" standard to settlements pursuant to Bankruptcy Rule 9019); *In re Enron Corp.*, 2003 WL 230838, at *2 (S.D.N.Y. Jan. 31, 2003) ("A bankruptcy court may approve a settlement where the proposed settlement is both fair and equitable and in the best interests of the estate.") (internal quotations and citations omitted).

32.     To evaluate whether a settlement is fair and equitable, courts in the Second Circuit consider factors including the following:  (a) the balance between the possibility of success in any litigation and the settlement's future benefits;  (b) the likelihood of complex and protracted litigation, with its attendance expense, inconvenience, and delay;  (c) the paramount interests of creditors, including the relative benefits, and the degree to which creditors either do not object to or affirmatively support the proposed settlement;  (d) whether other parties in interest support the settlement;  (e) the competency and experience of counsel supporting the settlement;  and (f) the extent to which the settlement is the product of arm's-length bargaining. *See In re Iridium Operating LLC*, 478 F.3d 452, 462 (2d Cir. 2007).  Not all of these factors are relevant to every case. *See Plaza Equities LLC v. Pauker (In re Copperfield Invs., LLC)*, 401 B.R. 87, 96 (Bankr. E.D.N.Y. 2009).

33.     Although a court should evaluate all factors "relevant to a fair and full assessment of the wisdom of the proposed compromise," *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968), a court need not conduct a "mini-trial" of the merits of the claims being settled, *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d. Cir. 1983), or conduct a full independent investigation. *See In re Drexel Burnham Lambert Grp., Inc.*, 134 B.R. 493, 496

(Bankr. S.D.N.Y. 1991).  The court is not required to decide every question of law or fact raised by litigation, but rather should canvass the issues to determine whether the settlement "falls below the lowest point in the range of reasonableness."  *See Cosoff v. Rodman*, 699 F.2d at 607-08;  *In Re Adelphia Communications Corp.*, 327 B.R. 143, 159 (Bankr. S.D.N.Y. 2005).

34.    The Trustee respectfully submits that the Settlement Agreement satisfies the standards for approval under Bankruptcy Rule 9019.  The Settlement Agreement effectively resolves all of the Trustee Litigation Claims in the Chapter 7 Case and provides for full payment of all allowed claims other than the Peak and Bay Point Claims (to the extent there are any), as well as all allowed administrative expense claims.  The Settlement Agreement also avoids the need for prolonged and costly litigation between and among the Trustee, the Bay Point Parties, Peak, and New TSI regarding the interrelated claims of Peak and Bay Point against the Debtor, the Debtor's claims against Peak and New TSI, and Bay Point's claims against Peak and New TSI.  As a result, the Settlement Agreement serves the interests of judicial economy.

35.    The Trustee has considered what he learned during the section 341 Meeting, discussions and conferences with the Debtor, counsel for Peak, counsel for the Bay Point Parties, and representatives of the Bay Point Parties.  The Trustee and the Togut Firm have also reviewed thousands of pages of documents and pleadings concerning the TSI Chapter 11 Cases, the Debtor's fundraising efforts, the DIP Loan, the Subsequent DIP Financing, the TSI sale process, the reconfiguration of various financing agreements following the TSI sale, the Note Exchange solicitation process, and the various claims and defenses asserted by the Settlement Parties.  Based on his review of the materials referenced above and his negotiations with Peak and the Bay Point

14

Parties, the Trustee has determined in his considered business judgment that the terms of the Settlement Agreement are reasonable and in the best interests of the Estate.

36.     While the Trustee believes that there is a reasonable likelihood that he would prevail on or all some of the Trustee Litigation Claims, which could provide relief in the form of reduction and/or subordination of the Peak Claim, avoidance of transactions disadvantageous to the Debtor, and/or payment of a monetary damages in lieu of avoidance, the Trustee has also concluded that there would be significant challenges, risks, and expenses in connection with litigating such claims, and that the outcome of such litigation would be uncertain.

37.     Among other things, Peak argues that the Trustee Litigation Claims are not supported by any viable causes of action under the Bankruptcy Code.  Peak also argues that the various prepetition transactions were executed by Peak and the Debtor's management in good faith and were reasonable based on the circumstances of TSI's Chapter 11 case and the need for additional DIP financing and exit financing for New TSI.  Peak also argues that the prepetition transactions were approved by the Delaware Bankruptcy Court in the TSI Chapter 11 Cases, and cannot now be challenged or second-guessed.  While the Debtor was advised by counsel in the prepetition transactions, Debtor's counsel may have been conflicted as it also represented New TSI in its purchase of TSI, and New TSI was ultimately controlled by Peak.  These issues, while potentially advantageous to the Trustee if the Trustee Litigation Claims were pursued, would nonetheless constitute heavily-contested issues that would need to be litigated to be established.

38.     In considering all these facts, the Trustee has determined that the Settlement Agreement allows the Estate to realize the most optimal outcome

consensually and efficiently, without the inevitable cost, expense, delay, and risks

associated with litigation.  The Settlement Agreement directly resolves all but one of the

claims filed against the Estate, and provides for the resolution of that final claim (Claim

No. 5 filed Legal Partners Group, LLC, for $6,155.64) at no further cost to the Estate

because pursuant to the Settlement Agreement, Peak has agreed either to object to or

satisfy all other claims at its own cost.  In addition, the Settlement Agreement provides

for the payment of $500,000 to address allowed administrative expenses incurred by the

Trustee and his professionals, including Special Counsel, with the Peak claim

subordinated to any allowed claims.  Other claims timely filed by creditors will be paid

by Peak either in the amount filed or, if Peak objects to such claims, in the allowed

amount.  Following payment of administrative claims, and other allowed timely claims,

the Trustee will make distributions accounting for the remainder of the Estate to Peak

on account of the subordinated Peak Claim.

## CONCLUSION

39.    Based on all of the foregoing, the Trustee respectfully submits that

the Settlement Agreement is fair, reasonable and in the best interests of the Debtor's

Estate under all of the relevant circumstances, and should be approved.

## NOTICE

40.    Pursuant to Local Bankruptcy Rule 9074-1(b), notice of the

Application has been given to:  (i) the Debtor, by its counsel;  (ii) the Bay Point Parties,

by their counsel;  (iii) Peak, by its counsel;  (iv) the United States Trustee;  (v) all of the

Debtor's known creditors;  and (vi) any party in interest which has filed a Notice of

Appearance in this Case.

## NO PRIOR REQUEST

41.      No prior application for the relief requested herein has been made

to this or any other Court.

**WHEREFORE** the Trustee respectfully entry of the Proposed Order

approving the Settlement Agreement;  and such other and further relief as is just and

proper.

Dated:  New York, New York
          January 27, 2023

                                            ALBERT TOGUT, not individually but solely
                                            in his capacity as Chapter 7 Trustee,
                                            By His Attorneys,
                                            TOGUT, SEGAL & SEGAL LLP
                                            By:

                                            /s/ Neil Berger
                                            NEIL BERGER
                                            EITAN BLANDER
                                            One Penn Plaza, Suite 3335
                                            New York, New York 10119
                                            (212) 594-5000

## EXHIBIT A

**Settlement Agreement**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 7 |
| FITNESS RECOVERY HOLDINGS, LLC, | Case No. 21-12146 (LGB) |
| Debtor. | |

## SETTLEMENT AGREEMENT

This Settlement Agreement (the " Settlement Agreement ") is made and entered into as of January 11, 2023 by and among Peak Credit LLC ("Peak"), Bay Point Advisors, LLC ("BPA"), Bay Point Capital Partners, LP ("BPCP"), Bay Point Capital Partners II, LP ("BPCP II", and together with BPA and BPCP, the "Bay Point Parties") and Albert Togut, not individually but solely in his capacity as Chapter 7 Trustee ("Trustee") of the estate of Fitness Recovery Holdings, LLC ("Debtor"). Peak, BPA, BPCP, BPCP II and the Trustee are hereinafter collectively referred to as the "Parties."

WHEREAS, the Debtor was the DIP lender to Town Sports International, LLC and its subsidiaries (together, "TSI"), which had commenced Chapter 11 cases in the United States Bankruptcy Court for the District of Delaware (the "Delaware Bankruptcy Court");

WHEREAS, the Debtor funded its initial $32 million DIP commitment with capital raised from outside lenders including BPCP and Peak, on terms provided in a note purchase agreement and promissory notes entered into with the respective lenders;

WHEREAS, in connection with the BPCP loan, the Debtor and BPA entered into a letter agreement pursuant to which the Debtor agreed to provide BPA with an equity kicker that would allow it to receive 2% of all distributions of cash to common members of the Debtor or 2% common equity ownership in the Debtor (or the acquisition entity formed to purchase TSI's assets) or, if the Debtor or acquisition entity was not successful in acquiring TSI's assets, the first $1 million of proceeds distributable to the Debtor after repayment of its loan obligations;

WHEREAS, on November 4, 2020, the Delaware Bankruptcy Court entered an order authorizing TSI to sell substantially all of its assets to New TSI Holdings, Inc. ("New TSI"), an entity designated by an affiliate of the Debtor and TSI's prepetition lenders;

WHEREAS, on November 6, 2020, the Delaware Bankruptcy Court entered an amended final DIP order increasing the DIP commitment by $2.8 million/week for every week after that ending November 13, 2020 in which the sale has not closed (the "Supplemental DIP Funding");

WHEREAS, $1.5 million of the Supplemental DIP Funding was raised from BPCP II on terms provided in the note purchase agreement and promissory note dated November 11, 2020;

WHEREAS, in connection with the BPCP II loan, the Debtor and BPA entered into another letter agreement increasing the above-referenced equity kicker to 2.6%;

WHEREAS, Peak funded the remaining portion of the Supplemental DIP Funding drawn by TSI and cash needed to close on the sale and capitalize New TSI with $3 million, via an amended promissory note, in exchange for all membership interests in the sponsor (the "Sponsor") identified in the sale order (indirect parent of New TSI) being issued to Peak;

WHEREAS, the sale closed on November 30, 2020, and upon the closing all membership interests in the Sponsor were issued to Peak, save a portion reserved for TSI's prepetition lenders;

WHEREAS, upon the closing New TSI and the Debtor executed a new loan agreement for the principal amount of the DIP obligations (as amended, the "New TSI Loan Agreement"), and TSI and the Debtor executed a payoff letter in relation to the DIP loan;

WHEREAS, New TSI's obligations under the New TSI Loan Agreement are secured by a first priority lien on substantially all of its assets;

WHEREAS, the Debtor's lenders other than BPCP, BPCP II and Peak exchanged their loans to the Debtor for loans to New TSI under a second lien credit agreement dated as of August 6, 2021 (the "Note Exchange");

WHEREAS, BPCP and BPCP II commenced a contract action on their promissory notes and obtained a judgment against the Debtor on December 15, 2021;

WHEREAS, on December 31, 2021, the Debtor commenced the above-captioned Chapter 7 case (the "Chapter 7 Case") in the United States Bankruptcy Court for the Southern District of New York (the "NY Bankruptcy Court");

WHEREAS, Mr. Togut is the Chapter 7 Trustee of the Debtor's estate (the "Estate");

WHEREAS, the Clerk of the NY Bankruptcy Court fixed January 30, 2023 as the last day to timely file proofs of claim in the Chapter 7 Case (the "Claims Bar Date");

WHEREAS, Peak, has filed a claim against the Debtor (Claim #1) in the amount of $31,335,901, plus postpetition interest and attorneys' fees under 11 U.S.C. § 506(b) based on its amended promissory note; (the "Peak POC"); BPA has filed a claim against the Debtor (Claim #2) based on its equity kicker letter agreements; and BPCP II and BPCP have filed claims against the Debtor in the amount of $1,770,616 (Claim #3) and $5,941,781 (Claim #4, and together with Claim #2 and Claim #3, the "Bay Point POC's"), respectively, based upon their judgment against the Debtor, plus attorneys' fees;

WHEREAS, the Trustee has filed an application (as may be amended) [Dkt. No. 21] to employ special litigation counsel to challenge the amount of the Peak POC and seek to equitably subordinate the same; and prosecute fraudulent transfer and other claims against Peak and New TSI, as described in the application (together, the "Trustee Litigation Claims");

WHEREAS, the Bay Point Parties have asserted claims against Peak, New TSI and certain of their respective officers, directors, employees and affiliates (the "Bay Point Litigation Claims");

WHEREAS, the Trustee, Peak and the Bay Point Parties have engaged in good faith discussions regarding a potential resolution of the Trustee Litigation Claims, the Bay Point Litigation Claims, the Peak POC and the Bay Point POC's;

WHEREAS, the Trustee, Peak and the Bay Point Parties have negotiated this settlement at arm's length to provide for a comprehensive and consensual resolution of the Trustee Litigation Claims, the Bay Point Litigation Claims, the Peak POC and the Bay Point POC's, and the various issues and proofs of claims filed or anticipated to be filed in the Chapter 7 Case;

WHEREAS, after consideration of the merits of the Trustee Litigation Claims, the Bay Point Litigation Claims and Peak's defenses thereto, the Trustee, Peak and the Bay Point Parties have each determined in their business judgment that this Settlement Agreement is in their respective best interests and in the best interests of the Debtor's Estate because continued litigation presents risks to their respective recoveries, will result in additional costs and result in delayed payments to creditors.

NOW, THEREFORE, in consideration of the mutual undertakings set forth below, the Parties hereby agree:

1.    The recitals set forth above are incorporated herein by reference.

2.    Promptly following his receipt of a fully executed copy of the Stipulation, the Trustee will file an application requesting that the NY Bankruptcy Court enter an order approving this Settlement Agreement (the "Approval Order"). The Stipulation shall be binding on the Parties upon execution, and each of the Parties shall support entry of the Approval Order. To the extent permitted by the Approval Order, the terms and conditions of this Stipulation shall not be stayed pursuant to Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure. If the Bankruptcy Court does not enter the Approval Order, this Settlement Agreement shall be null and void.

3.    Transfer of Bay Point Parties' Claims. The Bay Point Parties hereby irrevocably sell, transfer and assign all of their right, title and interest in, to and under the Bay Point POC's to Peak, without recourse of any kind, effective upon Peak's payment of the Purchase Price (defined below). In consideration for the Bay Point POC's, Peak shall pay the Bay Point Parties $7,725,690.59 (the "Purchase Price"), within three business days following entry of the Approval Order, in accordance with wire transfer instructions provided by the Bay Point Parties prior to such date. Within three business days following payment of the Purchase Price, the Bay Point Parties shall execute and deliver to Peak evidence of transfer of the Bay Point POC's, in the form attached as Exhibit 1. The Bay Point Parties represent and warrant that neither they nor any of their affiliates have any other claims against the Debtor, aside from those filed March 11, 2022.

4.    Payment to Trustee. Peak shall pay the Trustee $500,000 within three business days following entry of an Approval Order, in accordance with wire transfer instructions provided by the Trustee prior to such date.

5.    Subordination, Allowance of Peak Claim. Upon Entry of the Approval Order, the full amount of Peak's claims in the Chapter 7 Case, including without limitation Peak's right to recovery on the Bay Point POC's, shall be subordinated to all other claims, commissions, compensation, and expenses filed and/or allowed in the Chapter 7 Case, for the purpose of

distribution; provided, however, that Peak's claims shall be allowed as a secured claim in the filed amount set forth in the Peak POC, plus postpetition interest and attorneys' fees under 11 U.S.C. § 506(b).

6.    <u>Other Claims</u>.  If any creditor of the Debtor other than Peak and the Bay Point Parties files a proof of claim in the Chapter 7 Case on or before the Claims Bar Date, Peak shall either object to or pay such claim(s) in full by February 28, 2023 to the extent not yet paid from the Debtor's Estate pursuant to an order approving a Trustee's final report and account in the Chapter 7 Case, subject to Peak being furnished a Form W-9 by the creditor, in full and final satisfaction of such claim(s).  If Peak objects to any such claim(s), Peak shall pay the amount allowed by final order of the NY Bankruptcy Court to the extent not yet paid from the Debtor's Estate pursuant to an order approving a Trustee's final report and account in the Chapter 7 Case, subject to Peak being furnished a Form W-9 by the creditor, in full and final satisfaction of such claim(s).  The Parties lack knowledge of claims of potential creditors that have not filed proofs of claim as of the date hereof, aside from those listed on the Debtor's schedules of assets and liabilities and creditor matrix on file as of the date hereof.  All creditors of the Debtor that are not Parties to this Settlement Agreement are intended third party beneficiaries of this Settlement Agreement, and they shall be entitled to enforce this Settlement Agreement against Peak if it fails to pay their respective claims pursuant to this Section 6.

7.    <u>Release by Trustee and Bay Point Parties of Peak and New TSI Parties</u>.  Effective upon the later of: (i) entry of the Approval Order and (ii) the completion of all of Peak's payments under Sections 3, 4 and 6 of this Settlement Agreement, the Trustee and the Bay Point Parties ("<u>Trustee and Bay Point Releasors</u>") hereby release Peak, New TSI and their respective subsidiaries and affiliates, and their respective shareholders, members, managers, directors, officers, employees, counsel and representatives (together, "<u>Peak Releasees</u>") from any and all obligations, liabilities, debts, claims, causes of action, including, without limitation, all Trustee Litigation Claims and Bay Point Litigation Claims, and for the avoidance of doubt all fraudulent transfer claims relating to the issuance of equity interests in the Sponsor to Peak and all fraudulent transfer claims relating to Peak's amended promissory note, as well as all causes of action relating to the Note Exchange or any right or entitlement to equity in Sponsor, New TSI or their respective affiliates, and demands of any kind whatsoever, at law or in equity, direct or indirect, known or unknown, discovered or undiscovered, that the Trustee and Bay Point Releasors ever had, now have or hereafter can, shall or may have against any of the Peak Releasees, from the beginning of the world to the date hereof concerning or in any way related to the Debtor or the Chapter 7 Case; provided, however, this Section 7 shall not release: (i) any claim that any Party or creditor of the Debtor has to enforce this Settlement Agreement or (ii) claims for damages based upon a breach of this Settlement Agreement.

8.    <u>Release By Peak and New TSI of Bay Point Parties</u>.  Effective upon entry of the Approval Order, Peak and New TSI, and all persons claiming by, through or under them (together, the "<u>Peak Releasors</u>") hereby release the Bay Point Parties and their subsidiaries and affiliates, their respective shareholders, members, managers, directors, officers, employees, counsel and representatives (together, the "<u>Bay Point Releasees</u>") from any and all obligations, liabilities, debts, claims, causes of action, and demands of any kind whatsoever, at law or in equity, direct or indirect, known or unknown, discovered or undiscovered, that the Peak Releasors ever had, now have or hereafter can, shall or may have against any of the Bay Point Releasees from the beginning

of the world to the date hereof; provided, however, this Section 8 shall not release any claim that any Peak Releasor has for a breach of or to enforce this Settlement Agreement.

9.    <u>Compromise</u>.    The Parties acknowledge that this Settlement Agreement is a compromise of disputed claims and that none of Peak nor New TSI admits, and each expressly denies, any liability on its part.  This Settlement Agreement shall not be treated as or deemed to be evidence of or an admission of any fact or liability by any Party, or the merit or lack of merit of any claim or defense of any Party.

10.    <u>Amendment</u>.    No amendment or modification to this Settlement Agreement shall be binding or enforceable unless in writing and signed by the Parties and approved by the NY Bankruptcy Court.  Notwithstanding anything to the contrary herein, nothing contained in this Stipulation shall constitute a waiver of the Trustee's fiduciary duties to the Debtor and the Estate in this or any other case, or his right to take such steps that he, in his sole discretion, determines to be necessary or appropriate to preserve and protect such duties.

11.    <u>Governing Law; Consent to Jurisdiction</u>.    This Settlement Agreement shall be interpreted and construed in accordance with the provisions of the Bankruptcy Code and, where not inconsistent, the laws of the State of New York, without regard to the conflict of laws principles of the State of New York.  Each of the Parties hereby irrevocably consents to the jurisdiction of the NY Bankruptcy Court with respect to any action to enforce and/or interpret the terms and provisions of this Settlement Agreement and expressly waives any right to commence any such action in any other forum.

12.    <u>Entire Agreement</u>.    This Settlement Agreement sets forth the entire agreement between the Parties and fully supersedes any and all prior agreements and understandings, written or oral, between the Parties pertaining to the subject matter hereof.

13.    <u>Successors and Assigns</u>.    This Settlement Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and assigns.

14.    <u>Further Assurances</u>.    The Parties shall cooperate reasonably and execute all supplementary documents and take all additional actions that may be necessary or appropriate to give full force and effect to the terms and intent of this Settlement Agreement.

15.    <u>Severability</u>.    Should any provision(s) of this Settlement Agreement be declared or be determined by any court of competent jurisdiction to be illegal, invalid or unenforceable, then the legality, validity and enforceability of the remaining parts, terms or provisions shall not be affected thereby, and said illegal, unenforceable or invalid part, term or provision shall be deemed not to be a part of this Settlement Agreement.

16.    <u>Counterparts</u>.    This Settlement Agreement may be executed in one or more counterparts, including by email, PDF, or facsimile, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

17.    <u>Authorization</u>.    Each person signing this Settlement Agreement on behalf of a Party represents and warrants that he has been duly authorized and has the requisite authority to execute

and deliver this Settlement Agreement on behalf of such Party and to bind his respective client(s) to the terms and conditions of this Settlement Agreement.

IN WITNESS WHEREOF, the Parties have each caused this Settlement Agreement to be executed by themselves, or their respective authorized agent, as of the date first written above.

| | |
|---|---|
| Peak Credit LLC<br><br>By:_____<br>Name: Kyle Cleeton<br>Title: Authorized Agent<br><br>ALBERT TOGUT, not individually<br>but solely in his capacity as<br>Chapter 7 Trustee,<br>By his Attorneys,<br>TOGUT, SEGAL & SEGAL LLP,<br>By:_____<br><br>_____<br>NEIL BERGER<br>EITAN E. BLANDER<br>One Penn Plaza, Suite 3335<br>New York, New York 10119<br>(212) 594-5000 | Bay Point Advisors, LLC<br><br>By:_____<br>Name: Charles Andros<br>Title: Manager<br><br>Bay Point Capital Partners, LP<br><br>By: Bay Point Advisors, LLC<br>Its: General Partner<br><br>By:_____<br>Name: Charles Andros<br>Title: Manager<br><br>Bay Point Capital Partners II, LP<br><br>By: Bay Point Advisors, LLC<br>Its: General Partner<br><br>By:_____<br>Name: Charles Andros<br>Title: Manager |

and deliver this Settlement Agreement on behalf of such Party and to bind his respective client(s) to the terms and conditions of this Settlement Agreement.

IN WITNESS WHEREOF, the Parties have each caused this Settlement Agreement to be executed by themselves, or their respective authorized agent, as of the date first written above.

| | |
|---|---|
| Peak Credit LLC<br><br>By: _Kyle Cleeton (signature)_<br>Name: Kyle Cleeton<br>Title: Authorized Agent | Bay Point Advisors, LLC<br><br>By:_____<br>Name:<br>Title: |
| ALBERT TOGUT, not individually<br>but solely in his capacity as<br>Chapter 7 Trustee,<br>By his Attorneys,<br>TOGUT, SEGAL & SEGAL LLP,<br>By:_____<br><br>NEIL BERGER<br>EITAN E. BLANDER<br>One Penn Plaza, Suite 3335<br>New York, New York 10119<br>(212) 594-5000 | Bay Point Capital Partners, LP<br><br>By: Bay Point Advisors, LLC<br>Its: General Partner<br><br>By:_____<br>Name:<br>Title: Manager<br><br>Bay Point Capital Partners II, LP<br><br>By: Bay Point Advisors, LLC<br>Its: General Partner<br><br>By:_____<br>Name:<br>Title: Manager |

Exhibit 1

## EVIDENCE OF TRANSFER OF CLAIM

To:    Clerk, U.S. Bankruptcy Court for the Southern District of New York

Bay Point Advisors, LLC, Bay Point Capital Partners, LP and Bay Point Capital Partners II, LP (together, "Sellers") hereby certify that for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Sellers unconditionally and irrevocably sold, transferred and assigned to Peak Credit LLC, with offices at 853 Broadway, Suite 1109, New York, NY 10003 ("Buyer") all of Sellers' right, title and interest in and to the following claims filed against Fitness Recovery Holdings, LLC in Case No. 21-12146 (together, the "Claims"), without recourse of any kind, pursuant to the Order Approving Settlement Agreement dated January ___, 2023 [Dkt. No.  ]:

| Claim No. | Creditor Name | Date Claim Filed | Claim Amount per Claims Register |
|---|---|---|---|
| 2 | Bay Point Advisors, LLC | March 11, 2022 | $0 |
| 3 | Bay Point Capital Partners II, LP | March 11, 2022 | $1,770,616.46 |
| 4 | Bay Point Capital Partners, LP | March 11, 2022 | $5,941,780.75 |

Seller hereby waives any notice or hearing requirements imposed by Rule 3001 of the Federal Rules of Bankruptcy Procedure and stipulates that an order may be entered recognizing the assignment evidenced hereby as an unconditional assignment and Buyer as the valid owner of the Claims.

IN WITNESS WHEREOF, Sellers have executed this Evidence of Transfer of Claim on this 17th day of ___January___, 2023.

**Bay Point Capital Partners, LP**
**Bay Point Capital Partners II, LP**

By: Bay Point Advisors, LLC, their General Partner

By:_____
Name: Charles Andros
Title:  Manager

**Bay Point Advisors, LLC**

By:_____
Name: Charles Andros
Title: Manager

## EXHIBIT B

**Berger Declaration**

Togut, Segal & Segal LLP
*Attorneys for Albert Togut*
*Not Individually But Solely in His Capacity*
*as the Chapter 7 Trustee*
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Neil Berger
Eitan Blander

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

FITNESS RECOVERY HOLDINGS, LLC,

                    Debtor.

Case No. 21-12146-LGB

Chapter 7

## DECLARATION OF NEIL BERGER IN SUPPORT OF CHAPTER 7 TRUSTEE'S APPLICATION FOR AN ORDER APPROVING SETTLEMENT AGREEMENT BY AND AMONG CHAPTER 7 TRUSTEE, PEAK CREDIT LLC, AND BAY POINT PARTIES

Pursuant to 28 U.S.C. § 1746, I, Neil Berger, declare:

1.      I am a member of Togut, Segal & Segal LLP and counsel to Albert Togut, not individually but solely in his capacity as Chapter 7 trustee (the "Trustee") of the estate of Fitness Recovery Holdings LLC, the debtor (the "Debtor").

2.      I am in all respects competent to make this declaration (the "Declaration"), which I submit for all permissible purposes under the Federal Rules of Bankruptcy Procedure, the Federal Rules of Civil Procedure and the Federal Rules of Evidence in support of the Trustee's application (the "Application") for entry of an order (the "Proposed Order") approving the *Settlement Agreement* annexed to the Application (the "Settlement Agreement"), by and among the Trustee, Peak Credit LLC ("Peak"), Bay Point Advisors, LLC ("BPA"), Bay Point Capital Partners, LP ("BPCP"), and Bay Point Capital Partners II, LP ("BPCP II," and together with BPA and BPCP, the

"Bay Point Parties,"), pursuant to sections 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure Rules (the "Bankruptcy Rules").[1]

3.    Except as otherwise set forth herein, all statements in this Declaration are based on my personal knowledge, familiarity with the Debtor's affairs, my privileged communications with the Trustee, and/or my review of relevant documents. If I were called upon to testify, I could and would testify competently to the facts set forth herein.

4.    I have reviewed the Application, which is incorporated by reference herein, and relevant documents and records in the Debtor's Chapter 7 case. Based on my review, and my discussions with the Trustee and other relevant parties, the Trustee has determined that the Settlement Agreement is the product of arm's length negotiations, and is fair and equitable and in the best interest of the Debtor's estate.

5.    Accordingly, for the reasons set forth above and in the Application, the Trustee and I have concluded that the Settlement Agreement should be approved.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated:    New York, New York
          January 27, 2023

/s/ Neil Berger
NEIL BERGER
TOGUT, SEGAL & SEGAL LLP
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000

---

[1]    Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed to them in the Application.

## **EXHIBIT C**

**Proposed Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

FITNESS RECOVERY HOLDINGS, LLC,

               Debtor.

Case No. 21-12146-LGB

Chapter 7

### ORDER APPROVING SETTLEMENT AGREEMENT BY AND AMONG CHAPTER 7 TRUSTEE, PEAK CREDIT LLC, AND BAY POINT PARTIES

Upon the application (the "Application")[1] of Albert Togut, not individually but solely in his capacity as Chapter 7 trustee (the "Trustee") of the estate of Fitness Recovery Holdings LLC (the "Debtor"), by his attorneys, Togut, Segal & Segal LLP (the "Togut Firm"), for entry of an order (this "Order") approving the settlement agreement annexed hereto (the "Settlement Agreement"), entered into by and among the Trustee, Peak Credit LLC ("Peak"), Bay Point Advisors, LLC ("BPA"), Bay Point Capital Partners, LP ("BPCP"), and Bay Point Capital Partners II, LP ("BPCP II", and together with BPA and BPCP, the "Bay Point Parties" and, collectively with the Trustee and Peak, the "Settlement Parties"), pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure Rules (the "Bankruptcy Rules");  and upon the Declaration of Neil Berger in support of the Application;  and it appearing that the Court has jurisdiction to consider the Application and relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.);  and

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to such term in the Application except where indicated otherwise.

consideration of the Application and the relief requested therein being a core proceeding

pursuant to 28 U.S.C. § 157(b);  and venue being proper before this Court pursuant to 28 U.S.C.

§§ 1408 and 1409;  and it appearing that the relief requested in the Application is in the best

interests of the Debtor's estate;  and this Court having reviewed the Application and the

Settlement Agreement;  and good and sufficient notice of the Application having been given to

all parties entitled thereto;  and there having been no objections to the relief sought in the

Application;  and after due deliberation and sufficient cause appearing therefor, it is hereby:

   **ORDERED**, that the Application is GRANTED and the Settlement Agreement is

approved;  and it is further

   **ORDERED**, that the failure specifically to include any particular provision of the

Settlement Agreement in this Order shall not diminish or impair the effectiveness of such

provision, it being the intent of this Court that the Settlement Agreement be authorized and

approved in its entirety;  and it is further

   **ORDERED**, that the Trustee, the Togut Firm, and the Settlement Parties are

authorized to take all necessary actions and sign such documents as many be reasonably

necessary to carry out this Order;  and it is further

   **ORDERED**, that the Settlement Agreement and any related agreements,

documents, or other instruments may be further modified, amended, or supplemented by the

Settlement Parties, in a writing signed by all Settlement Parties without further order of this

Court, provided that any such modification, amendment or supplement is consistent with this

order and does not have a material adverse effect on the Debtor's estate;  and it is further

   **ORDERED**, that the Court shall retain exclusive jurisdiction to enforce and

implement this Order, including, but not limited to retaining jurisdiction to (a) compel

compliance with this Order and the Settlement Agreement, (b) resolve any dispute, controversy

or claim arising under or related to the Settlement Agreement, or the breach thereof, and

(c) interpret, implement, and enforce the provisions of this Order and resolve any disputes related

thereto.

DATED:  New York, New York
              _____ 2023

_____
HONORABLE LISA G. BECKERMAN
UNITED STATES BANKRUPTCY JUDGE