UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| |
|---|
| In re: <br><br> FITNESS RECOVERY HOLDINGS, LLC, <br><br> Debtor. |

Case No. 21-12146-LGB

Chapter 7

**ORDER APPROVING SETTLEMENT AGREEMENT BY AND AMONG
CHAPTER 7 TRUSTEE, PEAK CREDIT LLC, AND BAY POINT PARTIES**

Upon the application (the "Application")[1] of Albert Togut, not individually but solely in his capacity as Chapter 7 trustee (the "Trustee") of the estate of Fitness Recovery Holdings LLC (the "Debtor"), by his attorneys, Togut, Segal & Segal LLP (the "Togut Firm"), for entry of an order (this "Order") approving the settlement agreement annexed hereto (the "Settlement Agreement"), entered into by and among the Trustee, Peak Credit LLC ("Peak"), Bay Point Advisors, LLC ("BPA"), Bay Point Capital Partners, LP ("BPCP"), and Bay Point Capital Partners II, LP ("BPCP II", and together with BPA and BPCP, the "Bay Point Parties" and, collectively with the Trustee and Peak, the "Settlement Parties"), pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure Rules (the "Bankruptcy Rules"); and upon the Declaration of Neil Berger in support of the Application; and it appearing that the Court has jurisdiction to consider the Application and relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to such term in the Application except where indicated otherwise.

consideration of the Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that the relief requested in the Application is in the best interests of the Debtor's estate; and this Court having reviewed the Application and the Settlement Agreement; and good and sufficient notice of the Application having been given to all parties entitled thereto; and there having been no objections to the relief sought in the Application; and the Trustee having filed a Certificate of No Objection with regard to the Application [Docket No. 32]; and after due deliberation and sufficient cause appearing therefor, it is hereby:

**ORDERED**, that the Application is GRANTED and the Settlement Agreement is approved; and it is further

**ORDERED**, that the failure specifically to include any particular provision of the Settlement Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Settlement Agreement be authorized and approved in its entirety; and it is further

**ORDERED**, that the Trustee, the Togut Firm, and the Settlement Parties are authorized to take all necessary actions and sign such documents as many be reasonably necessary to carry out this Order; and it is further

**ORDERED**, that the Settlement Agreement and any related agreements, documents, or other instruments may be further modified, amended, or supplemented by the Settlement Parties, in a writing signed by all Settlement Parties without further order of this Court, provided that any such modification, amendment or supplement is consistent with this order and does not have a material adverse effect on the Debtor's estate; and it is further

**ORDERED**, that the Court shall retain exclusive jurisdiction to enforce and implement this Order, including, but not limited to retaining jurisdiction to (a) compel compliance with this Order and the Settlement Agreement, (b) resolve any dispute, controversy or claim arising under or related to the Settlement Agreement, or the breach thereof, and (c) interpret, implement, and enforce the provisions of this Order and resolve any disputes related thereto.

DATED: New York, New York
          February 21, 2023

                                          **/s/ Lisa G. Beckerman**
                                          HONORABLE LISA G. BECKERMAN
                                          UNITED STATES BANKRUPTCY JUDGE

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 7 |
| FITNESS RECOVERY HOLDINGS, LLC, | Case No. 21-12146 (LGB) |
| Debtor. | |

# SETTLEMENT AGREEMENT

This Settlement Agreement (the " Settlement Agreement ") is made and entered into as of January 11, 2023 by and among Peak Credit LLC ("Peak"), Bay Point Advisors, LLC ("BPA"), Bay Point Capital Partners, LP ("BPCP"), Bay Point Capital Partners II, LP ("BPCP II", and together with BPA and BPCP, the "Bay Point Parties") and Albert Togut, not individually but solely in his capacity as Chapter 7 Trustee ("Trustee") of the estate of Fitness Recovery Holdings, LLC ("Debtor"). Peak, BPA, BPCP, BPCP II and the Trustee are hereinafter collectively referred to as the "Parties."

WHEREAS, the Debtor was the DIP lender to Town Sports International, LLC and its subsidiaries (together, "TSI"), which had commenced Chapter 11 cases in the United States Bankruptcy Court for the District of Delaware (the "Delaware Bankruptcy Court");

WHEREAS, the Debtor funded its initial $32 million DIP commitment with capital raised from outside lenders including BPCP and Peak, on terms provided in a note purchase agreement and promissory notes entered into with the respective lenders;

WHEREAS, in connection with the BPCP loan, the Debtor and BPA entered into a letter agreement pursuant to which the Debtor agreed to provide BPA with an equity kicker that would allow it to receive 2% of all distributions of cash to common members of the Debtor or 2% common equity ownership in the Debtor (or the acquisition entity formed to purchase TSI's assets) or, if the Debtor or acquisition entity was not successful in acquiring TSI's assets, the first $1 million of proceeds distributable to the Debtor after repayment of its loan obligations;

WHEREAS, on November 4, 2020, the Delaware Bankruptcy Court entered an order authorizing TSI to sell substantially all of its assets to New TSI Holdings, Inc. ("New TSI"), an entity designated by an affiliate of the Debtor and TSI's prepetition lenders;

WHEREAS, on November 6, 2020, the Delaware Bankruptcy Court entered an amended final DIP order increasing the DIP commitment by $2.8 million/week for every week after that ending November 13, 2020 in which the sale has not closed (the "Supplemental DIP Funding");

WHEREAS, $1.5 million of the Supplemental DIP Funding was raised from BPCP II on terms provided in the note purchase agreement and promissory note dated November 11, 2020;

WHEREAS, in connection with the BPCP II loan, the Debtor and BPA entered into another letter agreement increasing the above-referenced equity kicker to 2.6%;

WHEREAS, Peak funded the remaining portion of the Supplemental DIP Funding drawn by TSI and cash needed to close on the sale and capitalize New TSI with $3 million, via an amended promissory note, in exchange for all membership interests in the sponsor (the "Sponsor") identified in the sale order (indirect parent of New TSI) being issued to Peak;

WHEREAS, the sale closed on November 30, 2020, and upon the closing all membership interests in the Sponsor were issued to Peak, save a portion reserved for TSI's prepetition lenders;

WHEREAS, upon the closing New TSI and the Debtor executed a new loan agreement for the principal amount of the DIP obligations (as amended, the "New TSI Loan Agreement"), and TSI and the Debtor executed a payoff letter in relation to the DIP loan;

WHEREAS, New TSI's obligations under the New TSI Loan Agreement are secured by a first priority lien on substantially all of its assets;

WHEREAS, the Debtor's lenders other than BPCP, BPCP II and Peak exchanged their loans to the Debtor for loans to New TSI under a second lien credit agreement dated as of August 6, 2021 (the "Note Exchange");

WHEREAS, BPCP and BPCP II commenced a contract action on their promissory notes and obtained a judgment against the Debtor on December 15, 2021;

WHEREAS, on December 31, 2021, the Debtor commenced the above-captioned Chapter 7 case (the "Chapter 7 Case") in the United States Bankruptcy Court for the Southern District of New York (the "NY Bankruptcy Court");

WHEREAS, Mr. Togut is the Chapter 7 Trustee of the Debtor's estate (the "Estate");

WHEREAS, the Clerk of the NY Bankruptcy Court fixed January 30, 2023 as the last day to timely file proofs of claim in the Chapter 7 Case (the "Claims Bar Date");

WHEREAS, Peak, has filed a claim against the Debtor (Claim #1) in the amount of $31,335,901, plus postpetition interest and attorneys' fees under 11 U.S.C. § 506(b) based on its amended promissory note; (the "Peak POC"); BPA has filed a claim against the Debtor (Claim #2) based on its equity kicker letter agreements; and BPCP II and BPCP have filed claims against the Debtor in the amount of $1,770,616 (Claim #3) and $5,941,781 (Claim #4, and together with Claim #2 and Claim #3, the "Bay Point POC's"), respectively, based upon their judgment against the Debtor, plus attorneys' fees;

WHEREAS, the Trustee has filed an application (as may be amended) [Dkt. No. 21] to employ special litigation counsel to challenge the amount of the Peak POC and seek to equitably subordinate the same; and prosecute fraudulent transfer and other claims against Peak and New TSI, as described in the application (together, the "Trustee Litigation Claims");

WHEREAS, the Bay Point Parties have asserted claims against Peak, New TSI and certain of their respective officers, directors, employees and affiliates (the "Bay Point Litigation Claims");

WHEREAS, the Trustee, Peak and the Bay Point Parties have engaged in good faith discussions regarding a potential resolution of the Trustee Litigation Claims, the Bay Point Litigation Claims, the Peak POC and the Bay Point POC's;

WHEREAS, the Trustee, Peak and the Bay Point Parties have negotiated this settlement at arm's length to provide for a comprehensive and consensual resolution of the Trustee Litigation Claims, the Bay Point Litigation Claims, the Peak POC and the Bay Point POC's, and the various issues and proofs of claims filed or anticipated to be filed in the Chapter 7 Case;

WHEREAS, after consideration of the merits of the Trustee Litigation Claims, the Bay Point Litigation Claims and Peak's defenses thereto, the Trustee, Peak and the Bay Point Parties have each determined in their business judgment that this Settlement Agreement is in their respective best interests and in the best interests of the Debtor's Estate because continued litigation presents risks to their respective recoveries, will result in additional costs and result in delayed payments to creditors.

NOW, THEREFORE, in consideration of the mutual undertakings set forth below, the Parties hereby agree:

1. The recitals set forth above are incorporated herein by reference.

2. Promptly following his receipt of a fully executed copy of the Stipulation, the Trustee will file an application requesting that the NY Bankruptcy Court enter an order approving this Settlement Agreement (the "Approval Order"). The Stipulation shall be binding on the Parties upon execution, and each of the Parties shall support entry of the Approval Order. To the extent permitted by the Approval Order, the terms and conditions of this Stipulation shall not be stayed pursuant to Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure. If the Bankruptcy Court does not enter the Approval Order, this Settlement Agreement shall be null and void.

3. Transfer of Bay Point Parties' Claims. The Bay Point Parties hereby irrevocably sell, transfer and assign all of their right, title and interest in, to and under the Bay Point POC's to Peak, without recourse of any kind, effective upon Peak's payment of the Purchase Price (defined below). In consideration for the Bay Point POC's, Peak shall pay the Bay Point Parties $7,725,690.59 (the "Purchase Price"), within three business days following entry of the Approval Order, in accordance with wire transfer instructions provided by the Bay Point Parties prior to such date. Within three business days following payment of the Purchase Price, the Bay Point Parties shall execute and deliver to Peak evidence of transfer of the Bay Point POC's, in the form attached as Exhibit 1. The Bay Point Parties represent and warrant that neither they nor any of their affiliates have any other claims against the Debtor, aside from those filed March 11, 2022.

4. Payment to Trustee. Peak shall pay the Trustee $500,000 within three business days following entry of an Approval Order, in accordance with wire transfer instructions provided by the Trustee prior to such date.

5.  <u>Subordination, Allowance of Peak Claim</u>.  Upon Entry of the Approval Order, the full amount of Peak's claims in the Chapter 7 Case, including without limitation Peak's right to recovery on the Bay Point POC's, shall be subordinated to all other claims, commissions, compensation, and expenses filed and/or allowed in the Chapter 7 Case, for the purpose of distribution; provided, however, that Peak's claims shall be allowed as a secured claim in the filed amount set forth in the Peak POC, plus postpetition interest and attorneys' fees under 11 U.S.C. § 506(b).

6.  <u>Other Claims</u>.  If any creditor of the Debtor other than Peak and the Bay Point Parties files a proof of claim in the Chapter 7 Case on or before the Claims Bar Date, Peak shall either object to or pay such claim(s) in full by February 28, 2023 to the extent not yet paid from the Debtor's Estate pursuant to an order approving a Trustee's final report and account in the Chapter 7 Case, subject to Peak being furnished a Form W-9 by the creditor, in full and final satisfaction of such claim(s).  If Peak objects to any such claim(s), Peak shall pay the amount allowed by final order of the NY Bankruptcy Court to the extent not yet paid from the Debtor's Estate pursuant to an order approving a Trustee's final report and account in the Chapter 7 Case, subject to Peak being furnished a Form W-9 by the creditor, in full and final satisfaction of such claim(s).  The Parties lack knowledge of claims of potential creditors that have not filed proofs of claim as of the date hereof, aside from those listed on the Debtor's schedules of assets and liabilities and creditor matrix on file as of the date hereof.  All creditors of the Debtor that are not Parties to this Settlement Agreement are intended third party beneficiaries of this Settlement Agreement, and they shall be entitled to enforce this Settlement Agreement against Peak if it fails to pay their respective claims pursuant to this Section 6.

7.  <u>Release by Trustee and Bay Point Parties of Peak and New TSI Parties</u>.  Effective upon the later of: (i) entry of the Approval Order and (ii) the completion of all of Peak's payments under Sections 3, 4 and 6 of this Settlement Agreement, the Trustee and the Bay Point Parties ("<u>Trustee and Bay Point Releasors</u>") hereby release Peak, New TSI and their respective subsidiaries and affiliates, and their respective shareholders, members, managers, directors, officers, employees, counsel and representatives (together, "<u>Peak Releasees</u>") from any and all obligations, liabilities, debts, claims, causes of action, including, without limitation, all Trustee Litigation Claims and Bay Point Litigation Claims, and for the avoidance of doubt all fraudulent transfer claims relating to the issuance of equity interests in the Sponsor to Peak and all fraudulent transfer claims relating to Peak's amended promissory note, as well as all causes of action relating to the Note Exchange or any right or entitlement to equity in Sponsor, New TSI or their respective affiliates, and demands of any kind whatsoever, at law or in equity, direct or indirect, known or unknown, discovered or undiscovered, that the Trustee and Bay Point Releasors ever had, now have or hereafter can, shall or may have against any of the Peak Releasees, from the beginning of the world to the date hereof concerning or in any way related to the Debtor or the Chapter 7 Case; provided, however, this Section 7 shall not release: (i) any claim that any Party or creditor of the Debtor has to enforce this Settlement Agreement or (ii) claims for damages based upon a breach of this Settlement Agreement.

8.  <u>Release By Peak and New TSI of Bay Point Parties</u>.  Effective upon entry of the Approval Order, Peak and New TSI, and all persons claiming by, through or under them (together, the "<u>Peak Releasors</u>") hereby release the Bay Point Parties and their subsidiaries and affiliates, their respective shareholders, members, managers, directors, officers, employees, counsel and

representatives (together, the "Bay Point Releasees") from any and all obligations, liabilities, debts, claims, causes of action, and demands of any kind whatsoever, at law or in equity, direct or indirect, known or unknown, discovered or undiscovered, that the Peak Releasors ever had, now have or hereafter can, shall or may have against any of the Bay Point Releasees from the beginning of the world to the date hereof; provided, however, this Section 8 shall not release any claim that any Peak Releasor has for a breach of or to enforce this Settlement Agreement.

9. Compromise. The Parties acknowledge that this Settlement Agreement is a compromise of disputed claims and that none of Peak nor New TSI admits, and each expressly denies, any liability on its part. This Settlement Agreement shall not be treated as or deemed to be evidence of or an admission of any fact or liability by any Party, or the merit or lack of merit of any claim or defense of any Party.

10. Amendment. No amendment or modification to this Settlement Agreement shall be binding or enforceable unless in writing and signed by the Parties and approved by the NY Bankruptcy Court. Notwithstanding anything to the contrary herein, nothing contained in this Stipulation shall constitute a waiver of the Trustee's fiduciary duties to the Debtor and the Estate in this or any other case, or his right to take such steps that he, in his sole discretion, determines to be necessary or appropriate to preserve and protect such duties.

11. Governing Law; Consent to Jurisdiction. This Settlement Agreement shall be interpreted and construed in accordance with the provisions of the Bankruptcy Code and, where not inconsistent, the laws of the State of New York, without regard to the conflict of laws principles of the State of New York. Each of the Parties hereby irrevocably consents to the jurisdiction of the NY Bankruptcy Court with respect to any action to enforce and/or interpret the terms and provisions of this Settlement Agreement and expressly waives any right to commence any such action in any other forum.

12. Entire Agreement. This Settlement Agreement sets forth the entire agreement between the Parties and fully supersedes any and all prior agreements and understandings, written or oral, between the Parties pertaining to the subject matter hereof.

13. Successors and Assigns. This Settlement Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and assigns.

14. Further Assurances. The Parties shall cooperate reasonably and execute all supplementary documents and take all additional actions that may be necessary or appropriate to give full force and effect to the terms and intent of this Settlement Agreement.

15. Severability. Should any provision(s) of this Settlement Agreement be declared or be determined by any court of competent jurisdiction to be illegal, invalid or unenforceable, then the legality, validity and enforceability of the remaining parts, terms or provisions shall not be affected thereby, and said illegal, unenforceable or invalid part, term or provision shall be deemed not to be a part of this Settlement Agreement.

16. Counterparts. This Settlement Agreement may be executed in one or more counterparts, including by email, PDF, or facsimile, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

17. <u>Authorization</u>.  Each person signing this Settlement Agreement on behalf of a Party represents and warrants that he has been duly authorized and has the requisite authority to execute and deliver this Settlement Agreement on behalf of such Party and to bind his respective client(s) to the terms and conditions of this Settlement Agreement.

IN WITNESS WHEREOF, the Parties have each caused this Settlement Agreement to be executed by themselves, or their respective authorized agent, as of the date first written above.

| Peak Credit LLC<br><br>By: */s/ Kyle Cleeton*<br>Name: Kyle Cleeton<br>Title: Authorized Agent<br><br>ALBERT TOGUT, not individually but solely in his capacity as Chapter 7 Trustee,<br>By his Attorneys,<br>TOGUT, SEGAL & SEGAL LLP,<br>By: */s/ Neil Berger*<br>NEIL BERGER<br>EITAN E. BLANDER<br>One Penn Plaza, Suite 3335<br>New York, New York 10119<br>(212) 594-5000 | Bay Point Advisors, LLC<br><br>By: */s/ Charles Andros*<br>Name: Charles Andros<br>Title: Manager<br><br>Bay Point Capital Partners, LP<br><br>By: Bay Point Advisors, LLC<br><u>Its: General Partner</u><br><br>By: */s/ Charles Andros*<br>Name: Charles Andros<br>Title: Manager<br><br>Bay Point Capital Partners II, LP<br><br>By: Bay Point Advisors, LLC<br><u>Its: General Partner</u><br><br>By: */s/ Charles Andros*<br>Name: Charles Andros<br>Title: Manager |

# EVIDENCE OF TRANSFER OF CLAIM

To: Clerk, U.S. Bankruptcy Court for the Southern District of New York

Bay Point Advisors, LLC, Bay Point Capital Partners, LP and Bay Point Capital Partners II, LP (together, "Sellers") hereby certify that for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Sellers unconditionally and irrevocably sold, transferred and assigned to Peak Credit LLC, with offices at 853 Broadway, Suite 1109, New York, NY 10003 ("Buyer") all of Sellers' right, title and interest in and to the following claims filed against Fitness Recovery Holdings, LLC in Case No. 21-12146 (together, the "Claims"), without recourse of any kind, pursuant to the Order Approving Settlement Agreement dated January ___, 2023 [Dkt. No. ]:

| Claim No. | Creditor Name | Date Claim Filed | Claim Amount per Claims Register |
|---|---|---|---|
| 2 | Bay Point Advisors, LLC | March 11, 2022 | $0 |
| 3 | Bay Point Capital Partners II, LP | March 11, 2022 | $1,770,616.46 |
| 4 | Bay Point Capital Partners, LP | March 11, 2022 | $5,941,780.75 |

Seller hereby waives any notice or hearing requirements imposed by Rule 3001 of the Federal Rules of Bankruptcy Procedure and stipulates that an order may be entered recognizing the assignment evidenced hereby as an unconditional assignment and Buyer as the valid owner of the Claims.

IN WITNESS WHEREOF, Sellers have executed this Evidence of Transfer of Claim on this 17th day of January, 2023.

**Bay Point Capital Partners, LP**
**Bay Point Capital Partners II, LP**
By: Bay Point Advisors, LLC, their General Partner
By: */s/ Charles Andros*
Name: Charles Andros
Title: Manager

**Bay Point Advisors, LLC**
By: */s/ Charles Andros*
Name: Charles Andros
Title: Manager